{¶ 1} Relator, General Dynamics Land Systems, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial *Page 2 
Commission of Ohio ("commission"), to vacate its order that awarded permanent total disability ("PTD") compensation to Tommy R. Morris ("claimant"), and to enter a new order that considers evidence relator submitted after the December 31, 2007 deadline set forth in the commission's vocational pre-hearing conference letter.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, which is appended to this opinion, and recommended that this court deny relator's request for a writ of mandamus. Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator's objections raise no new arguments not already argued before the magistrate. Relator complains that the commission abused its discretion when it denied its request for a continuance and pre-trial conference. Relator contends the commission should have continued the January 14, 2008 hearing in order to determine whether its rebuttal evidence, which was submitted after the deadline for submitting vocation information, should have been considered under the circumstances. Relator also contends that the commission erred when it refused to consider that vocation information. We disagree with relator's contentions.
 {¶ 4} Ohio Adm. Code 4121-3-09(A)(1)(a) requires the parties to provide each other with copies of evidence they intend to rely upon at the hearing "as soon as available" and prior to the hearing. Ohio Adm. Code 121-3-09(A)(1)(b) provides the remedy in the event that a party fails to comply with paragraph (A)(1)(a). Pursuant to subsection (b), the commission had the discretion to continue the matter with instructions to the parties and/or their representatives to comply with the rule. An abuse of discretion *Page 3 
connotes more than just an error of law. It exists where the tribunal's attitude, evidence by its decision was unreasonable, arbitrary, or unconscionable. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 5} We agree with the magistrate that the commission did not abuse its discretion when it refused to grant relator a continuance of the matter. First, relator did not move to continue the matter until the day of the hearing. If relator desired a continuance and believed it was prejudiced by the failure of the claimant to provide a copy of Dr. Jennifer Stoeckel's July 24, 2007 vocational assessment "as soon as possible," it should have moved for a continuance prior to the date of the hearing.
 {¶ 6} Second, there is no evidence that a continuance was necessary. Ohio Adm. Code 4121-3-09(A)(1)(b) provides that, in the event a party fails to comply with paragraph (A)(1)(a), the hearing officer has the discretion to continue the claim with instructions to the parties to comply with the rule. Relator's issue was not with regard to future compliance with the rule, so there was no need for a continuance. Furthermore, Ohio Adm. Code 4121-3-09(A)(2) indicates that, if a dispute arises between the parties regarding the exchange of information, the hearing administrator may conduct a pre-hearing conference to consider the dispute. However, it was within the discretion of the hearing officer in the present case to refuse a pre-hearing conference, given relator's late request. Importantly, relator could have submitted vocation information at any time prior to the December 31, 2007 deadline. Instead, relator chose not to file any vocation information prior to the deadline and waited until it received Dr. Stoeckel's report to file "rebuttal" evidence. Although we can understand relator's displeasure with claimant's delay in providing Dr. Stoeckel's report to it, there are no provisions in the *Page 4 
Ohio Administrative Code for submission of rebuttal evidence. Thus, relator had no reasonable basis to delay the filing of evidence it believed would support its case, despite claimant's delay in filing Dr. Stoeckel's report. If relator wished to file vocation information, it clearly had the opportunity to do so in a timely manner, just as claimant did.
 {¶ 7} Third, although parties are free to submit vocation evidence, there is no requirement they do so. Relator was not required to submit vocation evidence. In addition, the commission could have ignored claimant's vocation evidence if it found it unpersuasive. The commission chose to rely upon claimant's evidence. Therefore, any claim of prejudice is speculative and implies the commission erred in finding claimant's evidence convincing.
 {¶ 8} For all of the above reasons, we find the magistrate did not err when it found the commission did not abuse its discretion when it refused to continue the hearing and failed to order a pre-hearing conference. Therefore, relator's objections are overruled.
 {¶ 9} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ. R. 53, and due consideration of relator's objections, we overrule the objections. Accordingly, we adopt the magistrate's decision as our own with regard to the findings of fact and conclusions of law, and deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
BRYANT and CONNOR, JJ., concur. *Page 5 
 APPENDIX MAGISTRATE'S DECISION Rendered November 25, 2008 IN MANDAMUS {¶ 10} In this original action, relator, General Dynamics Land Systems, Inc. ("relator" or "General Dynamics"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent *Page 6 
total disability ("PTD") compensation to respondent Tommy R. Morris ("claimant") and to enter a new order that considers evidence relator submitted after the December 31, 2007 deadline set forth in the commission's vocational pre-hearing conference letter.
Findings of Fact: {¶ 11} 1. On January 26, 1990, claimant sustained an industrial injury while employed as a laborer for relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim (No. L32705-22) is allowed for:
 Contusion of left knee; internal derangement, left knee with medical synovial plica; fractured left tibia, closed; cervicothoracic and lumbosacral strain/sprain; sprain of neck; sprain thoracic region; sprain lumbosacral; sprain/strain of wrist, left; L4-5 nerve root irritation/plexus; herniated disc, cervical spine; herniated lumbar spine.
 {¶ 12} 2. On November 22, 2006, claimant filed an application for PTD compensation. In support, claimant submitted a report, dated November 10, 2006, from Thomas F. Goodall, D.O., who opined that claimant "is clearly permanently and totally disabled from gainful employment as a result of the allowed conditions within this claim."
 {¶ 13} 3. On January 26, 2007, at relator's request, claimant was examined by Gerald S. Steiman, M.D., who opined that claimant is "able to perform a light duty job activity."
 {¶ 14} 4. On May 1, 2007, at the commission's request, claimant was examined by James T. Lutz, M.D., who opined on a physical strength rating form that claimant is capable of sedentary work with an overhead work restriction.
 {¶ 15} 5. On June 21, 2007, at his own request, claimant was examined for vocational assessment by psychologist Jennifer J. Stoeckel, Ph.D. Following several *Page 7 
tests administered to claimant, Dr. Stoeckel reported the testing results and issued a vocational opinion in a report dated July 24, 2007:
 TEST RESULTS
 On the Wechsler Adult Intelligence Scale-III, Mr. Morris obtained Verbal, Performance, and Full Scale IQ scores of 66, 74, and 66, respectively. His overall test scores places [sic] him at the mild MR range for intellectual functioning and at the 1st percentile. He demonstrates borderline visual spatial skills. I suspect some interference in test performance due to his emotional status but scores are likely diminished further as a result of age. Overall, his presentation is consistent with borderline capabilities. Intellectually, Mr. Morris is surpassed by 99% of the normative population. Intersubtest scatter was minimal for Verbal sub-tests. He was particularly weak for non-verbal reasoning and social judgment. On the visual spatial skills he showed some but not significant strength for non-verbal reasoning capacity but was weak on attention to detail and visual motor coordination and speed. Normally, individuals who score at this range have difficulty completing a high school education unless placed in a special education program. Within the labor force they are typically employed in unskilled positions. * * *
 * * *
 On the Wide Range Achievement Test-IV, Mr. Morris demonstrated significant academic deficits. He is reading and spelling at the 1st
grade level and performing math at the 2nd grade level. Academically, this individual would be considered functionally illiterate. * * *
 * * *
 OPINION
 * * * Mr. Morris is not employable. He is 66 years of age. His age alone would interfere with his ability to acquire new work skills as well as his ability to compete with younger workers for entry level positions. Furthermore, Mr. Morris has only a limited 9th grade education, has never obtained a GED, and in the past has worked as a grinder, forklift operator, and *Page 8 
machine operator. None of his previous employments would provide him with transferable skills. Furthermore, results of testing suggest borderline intellectual functioning, functional illiteracy, and below average work aptitudes. Mr. Morris was a gentleman who obviously was able to work competitively on a physical level. He is, however, illiterate, demonstrates a history of learning disabilities, has limited intellectual functioning, and poor work aptitudes. In this regard, Mr. Morris could not function at the sedentary or lighter ranges of employment particularly in light of his age characteristics. He would not be a candidate for vocational rehabilitation and will remain permanently and totally disabled in the foreseeable future.
 * * * Again, he presents as permanently and totally disabled given his physical allowances, residual impairment, medical evidence contained in the file, his advanced age, lack of transferable work skills, limited education, functional illiteracy, and below average intellectual, academic, and vocational functioning as noted per formal testing. * * *
 {¶ 16} 6. On November 16, 2007, the Cincinnati Hearing Administrator mailed a vocational pre-hearing conference letter, stating:
 Pursuant to Ohio Administrative Code Rule 121-3-34(C)(6)(b) all parties are advised they have until 11/30/2007, which is 14 days from the mailing date of this letter to make written notification to the Industrial Commission of their intent to submit additional vocational information on the issue of the injured worker's permanent and total disability application. If notification is not received within the above fourteen (14) day period, the submission of additional vocational information will be deemed to have been waived by the party.
 Upon timely notification, the additional vocational information shall be submitted to the Industrial Commission by 12/31/2007, which is 45 days from the mailing date of this letter. Upon expiration of the forty-five (45) day period, no further information will be accepted without prior approval from the hearing administrator. *Page 9 
 If good cause is shown, a pre-hearing conference shall be set regarding any matter concerning the processing of the permanent total disability application. * * *
 {¶ 17} 7. By letter dated November 20, 2007, relator, through counsel, notified the commission that it intended to file additional vocational information by December 31, 2007.
 {¶ 18} 8. By letter dated November 21, 2007, claimant, through counsel, notified the commission that he intended to file vocational information.
 {¶ 19} 9. On December 27, 2007, within the deadline, relator filed a copy of a report dated December 24, 2007, from vocational expert Maria E. Georgiafandis, who opined:
 According to Mr. Morris' Application for Compensation for Permanent Total Disability, dated 9/20/06, he completed the 9th grade and does not have a GED. He has on the job training at General Dynamics Land Systems, Inc. and Dayton Press Magazine Mfg.
 Mr. Morris reports his previous work history to include:
 • General Dynamics (1982 — 1990)
 • Forklift Operator — responsible for unloading trailers at the loading dock and loading parts onto trucks.
 • Parts Handler — placing parts on assembly line[.]
 • Grinder — grinding metal plates and prepping parts for welders[.]
 • Overhead Crane Operator — responsible for lifting turrets and service tanks[.]
 • Dayton Press Magazine Mfg. (1959 — 1982)
 • Machine Operator — responsible for operating packing machinery; monitoring package configuration to meet manufacturing specifications; operating material handling power equipment[.] *Page 10 
 Upon reviewing a resume submitted by Mr. Morris when he applied at General Dynamics in 1982, it is noted that he reports skills in operating small and large power equipment; planning and executing landscape projects; extensive home improvement projects; masonry work; and carpet cleaning.
 Mr. Morris claims that he has limited skills in reading, writing and basic math. He indicates that he is currently able to drive a car.
 The Statement of Facts prepared on 11/22/06 states that Mr. Morris served as a Sergeant in the United States Marine Corp. Reserve where he worked as a truck and jeep mechanic. Dates were not provided.
 * * *
 Although Mr. Morris has indicated that he only completed the 9th grade and has limited reading and writing skills, he has a stable work history demonstrating that with the proper training he has been able to perform multiple tasks and maintain productivity.
 Taking all of the above information into consideration, it is my opinion that Mr. Morris does possess the ability to perform sustained remunerative employment in various occupational areas. * * *
(Emphasis sic.)
 {¶ 20} 10. A December 27, 2007 letter from relator's counsel to the commission states that the Georgiafandis report was being served on claimant's counsel.
 {¶ 21} 11. On December 28, 2007, claimant filed with the commission a copy of Dr. Stoeckel's report.
 {¶ 22} 12. On January 4, 2008, claimant's counsel faxed to relator's counsel a copy of Dr. Stoeckel's report. *Page 11 
 {¶ 23} 13. By letter dated January 4, 2008, relator's counsel informed the commission that, on January 2, 2008, he had received notice of the January 14, 2008 hearing on the PTD application. The January 4, 2008 letter notified the commission that relator intended to show a video at the hearing.
 {¶ 24} 14. On January 7, 2008, relator filed the following documents as described by counsel's letter dated January 7, 2008:
 Enclosed are General Dynamics Land Systems' crane operator and rigging training manual and the test associated therewith, the claimant's application for employment with General Dynamics and his handwritten letter and resume received therewith, Mr. W. J. Cojut's January 12, 1990 letter and InfoQuest's print out of Mr. Morris' current driver's license status in the above claim. * * *
 {¶ 25} 15. On January 11, 2008, relator filed a report dated January 11, 2008 from psychologist Daniel J. Kuna, Ph.D., that criticizes Dr. Stoeckel's report. Dr. Kuna concludes:
 The record is inconsistent. It is difficult from this review to understand how a Mason, honorably discharged Marine with the rank of Sarge[a]nt, overhead crane operator based on passing a certification exam, and holding a chauffeur's license could now be testing in the mild mentally retarded range with 1st grade verbal abilities.
 {¶ 26} 16. On January 14, 2008, a staff hearing officer ("SHO") heard the PTD application. Apparently, the proceedings were not recorded. Thereafter, on January 23, 2008, the SHO mailed an order awarding PTD compensation starting November 10, 2006. The SHO's order states:
 Before addressing the merits of the injured worker's application, the Staff Hearing Officer must first address issues raised pre-hearing by the parties. *Page 12 
 On 01/07/2008 and again on 01/08/2008, the employer submitted substantial documentation to file regarding its defense of the injured worker's permanent and total disability application. On 01/11/2008, the self-insured employer also submitted a report from Dr. Daniel J. Kima [sic], dated 01/11/2008.
 Pursuant to OAC 4121-3-34(C)(9), the Hearing Officer determined that this evidence was not admissible on the adjudication of the injured worker's permanent and total disability application.
 The self-insured employer's legal counsel, argued on behalf of the employer, that the evidence must be allowed to be submitted and considered.
 This Staff Hearing Officer did not find the self-insured employer's argument in this respect to be well taken. A review of the file finds that a letter was mailed to all parties by the Industrial Commission stating that upon expiration of the 45 day period, no further information would be accepted to the file.
 The Staff Hearing Officer conducted a cursory review of the documentation submitted by the self-insured employer and found that it was evidence intended to be submitted for purposes of argument regarding vocational factors.
 The Staff Hearing Officer finds that the 45 day letter was mailed on 11/16/2007 by the Industrial Commission, with a cut off date for submission of evidence stated to be 12/31/2007.
 Based upon the foregoing, the Staff Hearing Officer found the newly submitted evidence to be not timely, and it was therefore barred from consideration at hearing today.
 * * *
 It is the further finding of the Staff Hearing Officer, based upon the narrative medical report and Physical Strength Rating form of Dr. Lutz, dated 05/01/2007, that the injured worker is fully capable of performing sedentary work activities, as defined on the attached Physical Strength *Page 13 
Rating form, along with the additional restriction of: "no overhead work."
 Having found that the injured worker is capable of performing sedentary work activities, the Staff Hearing Officer is now compelled to analyze the so-called [State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167] factors to determine whether or not the injured worker is capable of performing such sedentary work activities as identified by Dr. Lutz.
 As previously noted, the injured worker is sixty-six years old. As noted by the courts of Ohio on numerous occasions, age alone does not constitute an absolute barrier to re-employment. Rather, it must be considered in conjunction with all other relevant factors.
 In the case at hand, the Staff Hearing Officer finds the injured worker's age of sixty-six is a barrier to his ability to secure sedentary work as identified by Dr. Lutz. Again, as previously noted, the injured worker has a ninth grade education with no GED. The Staff Hearing Officer further finds that the injured worker's life experience has consisted wholly of manual and not sedentary labor. Based upon his application, the injured worker further states that he has no special training to perform any other work activities. The injured worker further reports a limited ability to read, write and perform basic math.
 The injured worker's intellectual capacity is further elaborated upon by Dr. Jennifer J. Stoeckel in a Vocational Assessment Report dated 07/24/2007, and submitted to file on behalf of the injured worker.
 In addition to interviewing the injured worker, Dr. Stoeckel caused the injured worker to undertake a number of tests including the Wechsler Adult Intelligence Scale-III. On that test, the injured worker obtained verbal, performance, and full-scale IQ scores of 66, 74, and 66 respectively. According to Dr. Stoeckel, the injured worker's overall test scores place him at the mild MR range for intellectual functioning and at the first percentile. Dr. Stoeckel further notes that the injured worker demonstrated borderline visual spacial skills. Overall, Dr. Stoeckel found the injured worker's presentation to be consistent with borderline capabilities. In the opinion of Dr. *Page 14 
Stoeckel, the injured worker is surpassed by 99% of the normative population. According to Dr. Stoeckel, individuals like the injured worker who score in this range have difficulty completing a high school education, which is consistent with the injured worker's past educational history, unless placed in a special education program. Within the labor force, these individuals are typically employed in unskilled positions according to Dr. Stoeckel.
 Dr. Stoeckel also caused the injured worker to undertake the Wide Range Achievement Test-IV. According to Dr. Stoeckel, the injured worker demonstrated significant academic deficits with reading and spelling results at the first grade level, and math at the second grade level. In the opinion of Dr Stoeckel, from an academic perspective, the injured worker "would be considered functionally illiterate."
 The injured worker testified at hearing that he did enroll in the United States Marine Corps after several failed efforts at taking the "entrance examination." The injured worker testified that he was finally able to secure a minimal passing grade, which permitted him to join the Corps. The injured worker testified that he was able to complete basic training and was assigned job duties consistent with heavy manual labor as reflected in his lifetime employment experience. No evidence has been presented that the injured worker undertook any additional educational or vocational training while in the Marine Corps, or that he was assigned any duties other than heavy manual labor. In this respect, the Staff Hearing Officer does not find the injured worker's term with the Marine Corps to be inconsistent with the findings of Dr. Stoeckel.
 As noted above, the Staff Hearing Officer finds the injured worker's present age to be a significant barrier to his ability to engage in sedentary employment. This conclusion is based upon a combination of factors including the injured worker's severely restricted and limited prior work experience in heavy manual labor, and in light of the injured worker's severely limited intellectual capacity and prior academic record. The Hearing Officer finds that the injured worker's present intellectual capacity, as reflected in the test results secured by Dr. Stoeckel, establishes beyond cavil that the injured worker is incapable, at his present age, of successfully engaging in any academic training or any *Page 15 
additional vocational retraining to develop the skills necessary to engage in sedentary work activities.
 Based upon the foregoing findings, it is therefore the finding of the Staff Hearing Officer that the injured worker is incapable of performing sedentary work activities as a result of the allowed conditions in the present claim. The Staff Hearing Officer further finds that the injured worker is incapable of returning to any form of sustained remunerative employment as a result of this industrial injury. It is therefore the order of the Staff Hearing Officer that the injured worker's permanent total disability application be granted.
 It is the further order of the Staff Hearing Officer that 100% of this award is to be paid in the present claim.
 It is the further order of the Staff Hearing Officer that the injured worker's benefits in this claim be started effective 11/10/2006, the date of Dr. Goodall's report.
 This order is based upon the reports of Dr. Lutz and D[r]. Stoeckel and analysis set forth herein.
 {¶ 27} 17. On February 12, 2008, relator moved for reconsideration of the SHO's order mailed January 23, 2008. In support, relator submitted an affidavit executed on February 12, 2008 by relator's counsel. The affidavit avers:
 [Four] A copy of Dr. Stoeckel's July 24, 2007 report was not provided to General Dynamics Land Systems, Inc. or its authorized representatives until January 4, 2008.
 [Five] On January 14, 2008, prior to a hearing before the staff hearing officer on the injured worker's application for an award of permanent total disability compensation, the staff hearing officer held a meeting with the injured worker's attorney, Joseph Ebenger, and affiant.
 [Six] During this January 14, 2008 meeting, the aforementioned discussed the admissibility of evidence filed by General Dynamics after December 31, 2007. During that discussion, affiant requested the hearing be continued and a pre-hearing conference scheduled so that the administrator could determine whether there was good cause to include *Page 16 
the evidence filed by General Dynamics after December 31, 2007.
 [Seven] The staff hearing officer then excused all counsel and conducted a hearing in another matter.
 [Eight] When the staff hearing officer recalled the hearing in the present claim, he announced he would deny General Dynamics' request for a continuance and a pre-hearing conference and excluded the evidence filed by General Dynamics after December 31, 2007.
 [Nine] The staff hearing officer then proceeded to hear argument on the merits of the injured worker's permanent total disability application.
 {¶ 28} 18. On April 3, 2008, the three-member commission mailed an order denying relator's request for reconsideration.
 {¶ 29} 19. On June 16, 2008, relator, General Dynamics Land Systems, Inc., filed this mandamus action.
Conclusions of Law: {¶ 30} Relator filed evidence after the December 31, 2007 deadline set forth in the vocational pre-hearing conference letter that was mailed to the parties on November 16, 2007. At the January 14, 2008 hearing, relator orally moved for a pre-hearing conference and a continuance of the hearing in an attempt to obtain leave to file the evidence at issue.
 {¶ 31} In his January 14, 2008 order, the SHO determined that relator had filed the evidence after the December 31, 2007 deadline, and, on that basis, held that the evidence was untimely submitted and would not be considered. The SHO did not specifically indicate in his order that relator had orally moved for a pre-hearing conference and a continuance of the hearing and, thus, did not specifically state that the oral motion *Page 17 
was denied or on what grounds the oral motion was being denied. Nevertheless, given that the hearing was held on the merits of the PTD application, it is obvious that the oral motion for a pre-hearing conference and a continuance was denied by the SHO.
 {¶ 32} Ohio Adm. Code 4121-3-34(C)(6)(b) provides authority to the hearing administrator to notify the parties of the deadline for submitting additional vocational information. That deadline is the 45th day following the date copies of the reports of commission medical reports are submitted to the parties. In this case, the hearing administrator notified the parties that the 45-day period expired on December 31, 2007. There is no dispute here that December 31, 2007 was the deadline to be observed under the rule.
 {¶ 33} Ohio Adm. Code 4121-3-09(A)(1)(a) provides that the parties shall provide to each other "as soon as available and prior to hearing, a copy of the evidence the parties intend to submit at a commission proceeding." Here, relator claims that claimant violated this rule by delaying service of Dr. Stoeckel's July 24, 2007 report until January 4, 2008 — a delay of over five months. Relator also complains that it did not receive Dr. Stoeckel's report until after the December 31, 2007 deadline had passed.
 {¶ 34} Given this scenario, the issue here is whether the commission abused its discretion in denying relator's oral request for a pre-hearing conference and a continuance of the hearing when such denial inevitably leads to the conclusion that the evidence at issue was untimely filed under the 45-day rule set forth at Ohio Adm. Code 121-3-34(C)(6)(b).
 {¶ 35} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below. *Page 18 
 {¶ 36} Preliminarily, it is helpful to set forth portions of the commission's rules at issue here.
 {¶ 37} Ohio Adm. Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(C) sets forth the commission's rules for processing PTD applications.
 Ohio Adm. Code 4121-3-34(C)(6) provides:
 (b) * * * [T]he hearing administrator shall notify the parties to the claim that a party has fourteen days from the date that copies of reports of the commission medical examinations are submitted to the parties within which to make written notification to the commission of a party's intent to submit additional vocational information to the commission that is relevant to the adjudication of the application for permanent total disability compensation.
 (i) Unless a party notifies the commission within the aforementioned fourteen-day period of the party's intent to submit additional vocational information to the commission, a party will be deemed to have waived its ability to submit additional vocational information to the commission that is relevant to the adjudication of the application for permanent total disability.
 (ii) Should a party provide timely notification to the commission of its intent to submit additional vocational information, the additional vocational information shall be submitted to the commission within forty-five days from the date the copies of the reports of commission medical examinations are submitted to the parties. Upon expiration of the forty-five day period no further vocational information will be accepted without prior approval from the hearing administrator.
 Ohio Adm. Code 4121-3-34(C)(7) provides:
 If the employer or the injured worker request, for good cause shown, that a pre-hearing conference be scheduled, a pre-hearing conference shall be set. The request for a pre-hearing conference shall include the identification of the *Page 19 
issues that the requesting party desires to be considered at the pre-hearing conference. The hearing administrator may also schedule a pre-hearing conference when deemed necessary on any matter concerning the processing of an application for permanent and total disability, including but not limited to, motions that are filed subsequent to the filing of the application for permanent and total disability.
 Ohio Adm. Code 4121-3-34(C)(9) provides:
 At the conclusion of the pre-hearing conference, a date for hearing before a staff hearing officer shall be scheduled no earlier than fourteen days subsequent to the date of a pre-hearing conference. After the pre-hearing conference, unless authorized by the hearing administrator, no additional evidence on the issue of permanent and total disability shall be submitted to the claim file. If the parties attempt to submit additional evidence on the issue of permanent and total disability, the evidence will not be admissible on the adjudication of permanent total disability compensation.
 {¶ 38} Ohio Adm. Code 4121-3-09 sets forth commission rules for the "[c]onduct of hearings before the commission and its staff and district hearing officers."
 {¶ 39} Ohio Adm. Code 4121-3-09(A) is captioned "Proof and discovery." Ohio Adm. Code 4121-3-09(A) provides:
 [1](a) The parties or their representatives shall provide to each other, as soon as available and prior to hearing, a copy of the evidence the parties intend to submit at a commission proceeding.
 (b) In the event a party fails to comply with paragraph (A)(1)(a) of this rule, the hearing officer has the discretion to continue the claim to the end of the hearing docket, or to a future date with instructions to the parties or their representatives to comply with the rule.
 (2) The free pre-hearing exchange of information relevant to a claim is encouraged to facilitate thorough and adequate preparation for commission proceedings. If a dispute arises between the parties regarding the exchange of information, the hearing administrator, pursuant to paragraph (B) of this *Page 20 
rule may conduct a pre-hearing conference to consider the dispute. At the conclusion of the pre-hearing conference, the hearing administrator may issue a compliance letter, which becomes part of the claim file and which shall be adhered to by the parties.
 {¶ 40} Ohio Adm. Code 4121-3-09(B) is captioned "Prehearing conferences." Ohio Adm. Code 4121-3-09(B)(1) provides:
 At any time prior to the hearing the hearing administrator may, for good cause, hold a prehearing conference to consider matters that would tend to expedite the proceeding.
 Ohio Adm. Code 4121-3-09(B)(9) is captioned "Continuances." It provides:
 (a)
 (i) Requests for continuances shall be addressed to the hearing administrator. * * *
 * * *
 (ii) Requests for continuance filed more than five calendar days prior to the date of hearing shall be processed by the hearing administrator, resulting in the issuance of a compliance letter either granting or denying the requested continuance based on the standard of good cause. Where a request for continuance is received within five calendar days of the scheduled hearing, the hearing administrator shall address the requested continuance based on the presence of extraordinary circumstances that could not have been foreseen by the requesting party. * * *
 * * *
 (iv) If a request for continuance is received on the day of the scheduled hearing, the adjudicator assigned to hold the hearing shall publish an order either granting or denying the request for continuance based on the presence of extraordinary circumstances that could not have been foreseen by the requesting party. * * * *Page 21 
 (v) If the adjudicator denies the requested continuance, the hearing shall proceed on the merits and the adjudicator shall reference in the order on the merits that the continuance was denied along with the reasons therefore.
 {¶ 41} Analysis begins with the observation that the rules at issue under Ohio Adm. Code 4121-3-34(C) were promulgated specifically for the processing of PTD applications, whereas the rules at issue under Ohio Adm. Code 4121-3-09 are applicable generally to hearings before the commission and its hearing officers.
 {¶ 42} Clearly, Ohio Adm. Code 4121-3-34(C)(6)'s provision for the 45-day deadline permits the parties to file vocational evidence simultaneously on the deadline. The provision itself provides neither party a right to submit rebuttal evidence in response to the evidentiary filings of the other party. While an early filing may, as a practical matter, enable the other party to prepare or collect evidence in rebuttal and file it by the deadline, Ohio Adm. Code 4121-3-34(C)(6) provides no right to submit evidence in rebuttal of the other party's filings. See State ex rel. Turbine Engine Components Textron, Inc. v.Indus. Comm., 93 Ohio St.3d 156, 2001-Ohio-1296 (construing the commission's rule regarding the so-called acknowledgment letter).
 {¶ 43} Turning to relator's claim under Ohio Adm. Code 4121-3-09, when Dr. Stoeckel's report was faxed to relator's counsel on January 4, 2008, relator's counsel knew or should have known at that time that claimant had delayed providing a copy of Dr. Stoeckel's July 24, 2007 report by some five months.
 {¶ 44} Notwithstanding that on January 4, 2008, the scheduled hearing on the PTD application was ten days away, relator's counsel waited until the day of the hearing *Page 22 
to move for a pre-hearing conference and a continuance of the hearing. There is no explanation in the record for this delay.
 {¶ 45} Under the circumstances here, denial of a request for a pre-hearing conference and a continuance, made in the first instance at the hearing, was clearly within the sound discretion of the commission's hearing officer. Hence, relator has failed to show an abuse of discretion by the commission. See State ex rel. Ianiro v. Indus.Comm. (1979), 60 Ohio St.2d 152 (granting of continuances is within the sound discretion of the commission).
 {¶ 46} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
/s/ Kenneth W. Macke
KENNETH W. MACKE
MAGISTRATE *Page 1